```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                              07 CR 862 (AKH)

DANIEL BARRERA-BARRERA,

                Defendant.

------------------------------x
                                          New York, N.Y.
                                          May 28, 2014
                                          11:00 a.m.

Before:

              HON. ALVIN K. HELLERSTEIN,

                                          District Judge


                    APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
BENJAMIN NAFTALIS
     Assistant United States Attorney

RUBEN OLIVA
     Attorney for Defendant Barrera


ALSO PRESENT:  SELMA MARKS, Spanish Language Interpreter
```

1              (Case called)
2              MR. NAFTALIS:  Good morning, your Honor.
3              Benjamin Naftalis, for the government.
4              MR. OLIVA:  Ruben Oliva, on behalf of the defendant,
5    Ruben Barrera-Barrera, with the aid of the interpreters.
6              MR. MACK:  Good morning, your Honor.
7              Walter Mack.  I'm CJA counsel today.
8              THE COURT:  Good morning, Mr. Mack.  Nice to see you
9    again.
10             Good morning, Mr. Oliva.
11             Good morning, Mr. Barrera.
12             One moment, please.
13             (Pause)
14             THE COURT:  I received Mr. Naftalis' letter concerning
15   what might be a conflict of interest.
16             Mr. Oliva, do you have any comment on the letter?  I
17   am sure you've soon it.
18             MR. OLIVA:  Yes, your Honor, I have seen it and I
19   concur with the government's suggestion that a Curcio hearing
20   to obtain a knowing and voluntary waiver of any potential
21   conflict of interest by my client is indicated.  I would tell
22   the Court that he's already gone through the same procedure in
23   front of Judge Glaser.  I've already introduced Mr. Mack to my
24   client this morning and advised him that he will be visiting
25   him to discuss the Curcio issues.  And I just handed Mr. Mack

1  also a copy of the government's Curcio letter.  I had an extra
2  copy so that Mr. Mack can be fully briefed on what the issues
3  are on the law, of course.
4           THE COURT:  I should start by welcoming you to the
5  Court.
6           MR. OLIVA:  Thank you, your Honor.  It's always an
7  honor.
8           THE COURT:  Just on looking at this -- Well, first of
9  all, did Judge Glaser, did he make any rulings?
10          MR. OLIVA:  Yes.
11          THE COURT:  What was his ruling?
12          MR. OLIVA:  He accepted the defendant's Curcio waiver.
13          THE COURT:  It's hard for me to understand how that
14 could be because if you are representing other people who are
15 broadly similarly situated.  Each person has the potential of
16 saying things that damages the other.  And how is an attorney
17 to deal with those kinds of potentially inculpatory and
18 possibly inconsistent remarks?  No two people can remember an
19 incident the same way.  And the government is always concerned
20 about the credibility of and memory each of the people who are
21 potentially cooperating.  And so the attorney is in a difficult
22 position with regard to such inconsistencies.  I am speaking
23 theoretically.
24          MR. OLIVA:  That's correct. But that's only relevant
25 if the defendant were to proceed to trial and this defendant --

1    THE COURT:  No.  It's relevant also on the question of
2 cooperation.  The government, the attorney, the defendant --
3 sorry -- the defendant wished to cooperate but the government
4 may not accept the cooperation, particularly, if the government
5 is concerned whether the remarks given to the government are
6 the truth and if they're inconsistencies there's always a
7 question.
8    MR. OLIVA:  I suppose that may be the case but up to
9 now that hasn't been the issue in this case or, in fact, in the
10 other cases that that I represented.  Again, there is not any
11 real question I've provided attorney proffers as to my client's
12 information.  I don't think there's any significant dispute in
13 that regard in terms of any major inconsistencies in terms of
14 what my client indicates is his criminal culpability and what
15 others were indicating are his culpability.  I think that there
16 is not a gap.  However, as the Court might want to know as it
17 stands right now, the government's position right now in EDNY
18 and SDFL and EDNY and SDNY is that --
19    THE COURT:  The three courts, the Eastern District of
20 New York, Southern District of Florida and my court.
21    MR. OLIVA:  Obviously.  Their position right now is
22 they're continuing to evaluate whether or not they even want to
23 proffer this defendant and, again, it's not because of any
24 inconsistencies between what my client has proffered to them
25 through my written proffer but rather whether or not as a

decision by these three districts whether or not they wish to allow this defendant to cooperate which as the Court is well aware is not a right that the defendant has. The defendant is not entitled to obtaining or eliciting a cooperation agreement from the government.

THE COURT: I understand that --

MR. OLIVA: -- sure. However, this defendant has indicated to me in quite uncertain terms that he does not wish to go to trial, that he would rather plead guilty and to continue his position of wanting to face the responsibility for the crimes that he's committed and in that regard be able to, perhaps, persuade the different courts that he is entitled to some mitigation based on any number of sentencing factors that we could posit. And even in regards to those as it stands right now, there is no actual conflict between what he would argue and what anybody else is saying.

If that were to happen of course and if there is an actual conflict then it would be my obligation to bring that to the attention of the Court. It would be the government's obligation to bring that to the attention of the Court. But as it stands right now it's all we have is a potential conflict that is clearly waivable by this defendant, obviously, predicated upon having been fully, having that matter explained to him by Curcio counsel and even by this Court and to make sure that the defendant understands the perils of not having

1    the undivided loyalties of counsel.  I have discussed this with
2    him at length.  I've discussed this all the way from when he
3    was still in Colombia.  And the defendant has been steadfast in
4    wanting to, again, not take this matter to trial but instead
5    either be able to get a cooperation agreement and have that
6    opportunity or if that's not available then to be able to still
7    plead guilty and avail himself of what he considers are much
8    better arguments than protesting his innocence.
9              THE COURT:  So, you've told me about Judge Glasser's
10   ruling, namely, that the waiver by Mr. Barrera was accepted.
11             MR. OLIVA:  Yes.
12             THE COURT:  Did the judge in the Southern District of
13   Florida rule?
14             MR. OLIVA:  He has not yet appeared in Florida.  That
15   will be the Honorable Judge Donald Graham but he has only been
16   up here in New York.  So he has not yet been taken to the
17   Southern District of Florida for even an initial appearance on
18   that case.
19             THE COURT:  Thank you.  Mr. Naftalis any comment?
20             MR. NAFTALIS:  Your Honor, I don't have that much to
21   add only to advise the Court that the reason we brought this to
22   the Court's attention at this time we have been in discussions
23   with --
24             THE COURT:  You have every right to do so and I
25   understand.  You don't need to explain that.  From the fact

1    that Judge Glasser whom I have extraordinary respect for has
2    accepted Curcio hearing is there need for me to go through the
3    same process?
4             MR. NAFTALIS:  Your Honor, I think it's instructive
5    that Judge Glasser already found the waiver.  I think it would
6    probably be a good idea unless Mr. Oliva thinks otherwise for
7    yourself to conduct the same inquiry to satisfy this Court of
8    the same.
9             THE COURT:  I suppose I have to.  But it's hard for me
10   to think that I could add to anything that Judge Glasser has
11   concerned himself about or come to a different idea about
12   waive-ability.
13            MR. NAFTALIS:  I think that's probably true, your
14   Honor, but I think for the benefit of all if it would probably
15   make sense to conduct the same inquiry.  You know in terms of
16   timing of it, your Honor, if your Honor wants to do it today I
17   think --
18            THE COURT:  Well, I don't think -- Well, I'll ask
19   Mr. Mack.  He'll tell me when he's ready.  He can't tell me
20   when he's ready till he's talked to his client, right?
21            MR. NAFTALIS:  That would be -- move on.
22            THE COURT:  If I'm going to do this, I'm not going to
23   do this in a way that prejudices Mr. Mack's ability to conduct
24   his job as a lawyer.
25            MR. NAFTALIS:  Absolutely.

1             THE COURT:  Mr. Mack, my comment?
2             MR. MACK:  No, your Honor.  I would want some time.  I
3    don't know how extensive but I, certainly, would want to spend
4    some time familiarizing myself with what Judge Glasser had.  I
5    doubt very much given how backed up I already am today that I
6    could do that today.
7             THE COURT:  Two weeks be a good time?
8             MR. MACK:  More than enough.
9             THE COURT:  Could be less.
10            MR. MACK:  I think a week.  If -- I don't know if I am
11   holding up proceedings before your Honor.
12            THE COURT:  Mr. Naftalis, what's your --
13            MR. NAFTALIS:  None, your Honor.
14            THE COURT:  So, let's do two weeks.
15            MR. MACK:  Very well.
16            THE COURT:  Good.  Give yourself some time.
17            Brigitte?
18            COURTROOM DEPUTY:  June 10, at four o' clock.
19            THE COURT:  OK.  Folks, June 10 at four.
20            MR. OLIVA:  And just in abundance of caution -- I
21   don't have my calendar with me.
22            THE COURT:  Been confiscated by the marshals, yes.
23            MR. OLIVA:  But I suspect that June 10 is fine but if
24   it isn't may I call chambers?
25            THE COURT:  If June 10 is not good why don't you be in

E5SAABARC                    Conference

1  touch with Ms. Jones and have a better date.
2           MR. OLIVA:  Thank you.
3           THE COURT:  So, it'll be June 10 at four o' clock.
4           Mr. Naftalis moves to exclude time until then and that
5  motion is granted.
6           MR. NAFTALIS:  Thank you, your Honor.
7           MR. OLIVA:  Thank you, your Honor.
8           MR. MACK:  Thank you.
9           THE COURT:  All right.  Thank you.  Mr. Barrera, do
10 you need any further explanation?
11          THE DEFENDANT:  No, sir.  It's clear to me how things
12 are going.
13          THE COURT:  OK.  Thank you very much.  Then we'll
14 recess until the 10th.
15          MR. NAFTALIS:  Thank you.
16                          (Adjourned)
17
18
19
20
21
22
23
24
25