UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. s1 07 CR 862 (AKH)(RLE)
Plea

DANIEL BARRERA BARRERA,

Defendant.

------------------------------x

New York, N.Y.
November 20, 2014
10:55 a.m.

Before:

HON. RONALD L. ELLIS,

Magistrate Judge

APPEARANCES

PREET BHARARA
United States Attorney for the
Southern District of New York
BENJAMIN A. NAFTALIS
JENNA M. DABBS
Assistant United States Attorneys

RUBEN OLIVA
Attorney for Defendant

ALSO PRESENT: DAVID MINTZ, Interpreter (Spanish)

(Case called)

MR. NAFTALIS: Good morning, your Honor. Benjamin Naftalis and Jenna Dabbs, for the government.

THE COURT: Good morning.

MR. OLIVA: Good morning, your Honor. Ruben Oliva, on behalf of Daniel Barrera Barrera, who is prepared to proceed, with the assistance of the interpreter.

THE COURT: Good morning. Are we ready to proceed?

MR. OLIVA: Yes, your Honor.

MR. NAFTALIS: Yes, your Honor.

THE COURT: It's a felony plea. What is the defendant pleading to?

MR. NAFTALIS: Your Honor, he's going to be pleading to Count One of the indictment, it's a one-count indictment, but solely to one of the objects of the indictment. The indictment charges two objects of the narcotics conspiracy, and he's only going to be pleading to the objects set forth in paragraph 14 of the indictment, which is the 959, or distribution with the knowledge and intent that the cocaine be imported into the United States.

MR. OLIVA: Your Honor, with all due respect to the government, my client is going to be pleading to the entire indictment, to every object of the conspiracy, to every count, to every allegation contained in the indictment. The grand jury has charged him, and that's what we will be pleading to,

what the grand jury has charged him, regardless of what the government would like him to plead to.

MR. NAFTALIS: Your Honor, there's no agreement between the parties and it's the defendant's right to plead as he wishes.

THE COURT: I usually use the plea agreement as my guide to what he's been charged with. The paragraph in the plea agreement that talks about conspiracy to import and conspiracy to manufacture and distribute, are those the two elements that we're talking about?

MR. OLIVA: Your Honor, just to clarify, there is no plea agreement. The government had filed a Pimentel letter. We don't necessarily agree with it; we don't have to. We are pleading openly to the indictment.

THE COURT: I understand it is a Pimentel letter. Nevertheless, it is whatever is in there, in that paragraph. Do you know the paragraph we're talking about?

MR. NAFTALIS: Your Honor, the paragraph in the Pimentel?

THE COURT: Yes.

MR. NAFTALIS: It sets forth the two objects that are set forth in the indictment.

MR. OLIVA: That's correct.

MR. NAFTALIS: Mr. Oliva represented the defendant wants to plead to both objects and those two objects are set

forth in the letter you're looking at.

MR. OLIVA: That is correct.

THE COURT: Because I don't generally have any independent knowledge of what the maximums are, if it's not in the letter or communication between the parties, somebody's going to have to recite it. But you're saying that's okay.

MR. OLIVA: Yes.

THE COURT: You agree on that.

MR. OLIVA: Yes. The objects, whether it's one or both, don't affect the statutory maximums.

THE COURT: Okay.

MR. OLIVA: Which is life imprisonment.

MR. NAFTALIS: We agree, your Honor.

THE COURT: All right. Mr. Barrera, are you having any difficulty hearing through the earphones?

THE DEFENDANT: No, your Honor. Everything's fine.

THE COURT: Mr. Barrera, did you sign a consent to proceed before a United States magistrate judge on your felony plea allocution?

THE DEFENDANT: Yes, your Honor.

THE COURT: And was that process explained to you?

THE DEFENDANT: Yes, your Honor.

THE COURT: Before you signed the consent, did you discuss it with your attorney?

THE DEFENDANT: Yes, your Honor.

THE COURT: Did you have the assistance of an interpreter?

THE DEFENDANT: Yes, your Honor.

THE COURT: Did your attorney explain the consent to you?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that you have an absolute right to have this proceeding before a United States district judge?

THE DEFENDANT: Yes, your Honor.

THE COURT: And you're voluntarily proceeding before a United States magistrate judge?

THE DEFENDANT: Yes, your Honor.

THE COURT: Mr. Barrera, you are charged in a one-count indictment. That indictment charges you with conspiracy to import into the United States five kilograms and more of mixtures and substances containing a detectable amount of cocaine and manufacture and distribution of five kilograms and more of mixtures and substances containing detectable amounts of cocaine, intending and knowing that such substances would be imported into the United States. This conduct violates Title 21, United States Code, Sections 812, 952(a), 959, 960(b)(1)(B), and 963. The conduct alleged is from in or about 1998 through April of 2010.

This charge carries a maximum term of imprisonment of

life; a mandatory minimum term of imprisonment of ten years; a maximum term of supervised release of life; a mandatory minimum term of supervised release of five years; a maximum fine, which is the greatest of either $10 million, or twice the gross pecuniary gain derived from the offense or twice the gross pecuniary loss to persons other than yourself as a result of the offense. There's a $100 mandatory special assessment. Do you understand these penalties as I've read them to you?

THE DEFENDANT: Yes, your Honor. I understand them very well.

THE COURT: Mr. Barrera, do you also understand that if you are sentenced to any period of supervised release and violate the conditions of your supervised release, you may be sentenced to all or part of the term of supervised release without any credit for time already served?

THE DEFENDANT: Yes, your Honor. I do.

THE COURT: Mr. Barrera, are you a citizen of the United States?

THE DEFENDANT: Colombia.

THE COURT: Mr. Barrera, do you understand that because you're not a citizen of the United States, after you have served any sentence imposed by the Court, you are subject to being deported and that in all likelihood, after serving a sentence, you will in fact be deported?

THE DEFENDANT: Your Honor, I understand that very

well.

THE COURT: Daniel Barrera Barrera, how do you plead?

THE DEFENDANT: Guilty, your Honor.

THE COURT: Mr. Barrera, before I can recommend that your guilty plea be accepted to these charges, I must determine that you understand the plea and its consequences, that the plea is voluntary, and that there is a factual basis for the plea. For that purpose, I must ask you a number of questions and your answers must be under oath. Do you understand that the answers you give under oath may subject you to prosecution for perjury if you do not tell the truth?

THE DEFENDANT: I understand very well, your Honor.

THE COURT: Raise your right hand.

(Defendant sworn)

THE COURT: Thank you.

THE DEFENDANT: Thank you, your Honor.

THE COURT: Please state your full name for the record.

THE DEFENDANT: Daniel Barrera Barrera.

THE COURT: What is your date of birth?

THE DEFENDANT: November 6, 1968.

THE COURT: How many years of schooling do you have?

THE DEFENDANT: None, your Honor.

THE COURT: You've never been to school?

THE DEFENDANT: Never, your Honor.

THE COURT: Do you have any difficulty understanding what's happening today?

THE DEFENDANT: No, your Honor. I'm fine.

THE COURT: You have had enough time to discuss this with your attorney?

THE DEFENDANT: I have had enough time, your Honor.

THE COURT: Do you understand what the government says that you did?

THE DEFENDANT: Yes, your Honor. I understand very well.

THE COURT: Do you understand that you have a right to plead not guilty?

THE DEFENDANT: I understand very well, your Honor.

THE COURT: Do you understand that you have a right to a trial by jury on these charges?

THE DEFENDANT: Yes, your Honor. I understand very well.

THE COURT: Do you understand that if you were to plead not guilty and go to trial, you would be presumed innocent until the government proved your guilt beyond a reasonable doubt?

THE DEFENDANT: I understand very well, your Honor.

THE COURT: Are you currently being treated by a doctor or psychiatrist for any reason?

THE DEFENDANT: No, your Honor.

THE COURT: Have you taken any medications in the last 24 hours?

THE DEFENDANT: No, your Honor.

THE COURT: Are you feeling all right today?

THE DEFENDANT: Fine, your Honor. I feel fine.

THE COURT: Are you having any difficulty seeing, hearing, or understanding any of these proceedings?

THE DEFENDANT: No. No, your Honor. I'm fine.

THE COURT: Is there any reason why you could not make a knowing and voluntary plea today?

THE DEFENDANT: No. I'm fine, your Honor.

THE COURT: Mr. Barrera, do you understand that because you have a right to a trial, at a trial, you would have a number of important constitutional rights, including the right to be represented by counsel and to have counsel appointed for you if you cannot afford an attorney?

THE DEFENDANT: I understand very well, your Honor.

THE COURT: Do you understand, Mr. Barrera, that you have a right to have an attorney at every stage of the criminal proceedings?

THE DEFENDANT: I understand very well, your Honor.

THE COURT: Do you understand that at trial, you cannot be forced to testify against yourself?

THE DEFENDANT: I understand very well, your Honor.

THE COURT: Do you understand that at trial, you would

have the right to confront and cross-examine witnesses called by the government?

THE DEFENDANT: I understand very well, your Honor.

THE COURT: Do you understand that at trial, you would have the right to testify yourself and the right to call witnesses on your behalf and to compel their attendance by subpoena, if necessary?

THE DEFENDANT: I understand very well, your Honor.

THE COURT: Do you understand that if your guilty plea is accepted, there will be no trial of any kind and the only remaining steps in your case will be a presentence report and sentencing by Judge Hellerstein?

THE DEFENDANT: I understand very well, your Honor.

THE COURT: Have you discussed with your attorney the role that the Sentencing Guidelines play in sentencing?

THE DEFENDANT: Yes, your Honor. I've discussed it well with him.

THE COURT: Do you understand that there will be a calculation in your case under those guidelines?

THE DEFENDANT: Yes, your Honor. I understand it very well.

THE COURT: Do you understand that the calculation under the guidelines will take into account a number of factors, including the actual conduct in which you engaged, any victims of the offense, the role that you played in the

offense, whether or not you have accepted responsibility for your acts, whether you have any criminal history, and whether you have engaged in any obstruction of justice? Do you understand that?

THE DEFENDANT: I understand very well, your Honor.

THE COURT: Have those factors been explained to you by your attorney?

THE DEFENDANT: It was explained very well, your Honor.

THE COURT: Between now and the date of sentencing, the probation department will conduct an investigation and will prepare a presentence report. Your attorney, the government, and Judge Hellerstein will receive copies. Both your attorney and the government will have the opportunity to object if they believe anything in this report is inaccurate. Do you understand that?

THE DEFENDANT: I understand very well, your Honor.

THE COURT: Do you understand that until the presentence report is prepared, neither your attorney nor the government nor Judge Hellerstein will be able to determine precisely what range will be calculated under the guidelines?

THE DEFENDANT: I understand very well, your Honor.

THE COURT: Do you understand that whatever the range under the guidelines, the penalties in your case, including incarceration and fines and otherwise, cannot exceed the

maximums that I advised you of earlier?

THE DEFENDANT: I understand very well, your Honor.

THE COURT: Do you understand that whatever the range under the guidelines, Judge Hellerstein will still retain discretion as to the actual penalties to be imposed in your case?

THE DEFENDANT: I understand very well, your Honor.

THE COURT: Do you understand that in addition to the guidelines, Judge Hellerstein will also take into account the factors that are set forth in 18, United States Code, Section 3553(a)?

THE DEFENDANT: I understand very well, your Honor.

THE COURT: Have those factors been explained to you by your attorney?

THE DEFENDANT: He explained them to me very well, your Honor.

THE COURT: Do you understand that under certain circumstances, both you and the government may have a right to appeal the sentence imposed?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that if the sentence is more severe than you expected, you will be bound by your guilty plea and will not be permitted to withdraw it?

THE DEFENDANT: I understand very well, your Honor.

THE COURT: Do you understand that parole has been

abolished and that if you're sentenced to any period of imprisonment, you will be required to serve the entire term?

THE DEFENDANT: Yes, your Honor.

THE COURT: Mr. Barrera, has anyone made any promises to you to influence you to plead guilty?

THE DEFENDANT: No, your Honor.

THE COURT: Has anyone promised you a specific sentence if you plead guilty?

THE DEFENDANT: No, your Honor.

THE COURT: Have any threats been made to you by anyone to influence you to plead guilty?

THE DEFENDANT: No, your Honor.

THE COURT: Are you making this plea voluntarily, of your own free will and choice?

THE DEFENDANT: Yes, your Honor. I plead guilty.

THE COURT: Mr. Barrera, the government has sent to your attorney something called a Pimentel letter. In this letter, the government indicates its calculation as to what the Sentencing Guidelines would be and, according to the government, the range in your case would be life imprisonment. Do you understand that's the calculation the government has?

THE DEFENDANT: I understand it very well, your Honor.

THE COURT: Elements of the offense.

MR. NAFTALIS: Yes, your Honor. With respect to Count One of the indictment, S1 07 CR 862, the elements of the

offense are as follows: First, that there was a conspiracy or agreement between two or more persons to violate the narcotics laws of the United States; second, that the defendant knowingly became a member of or joined that conspiracy or agreement; third, that the object of that conspiracy was to manufacture and distribute a controlled substance knowing or intending that the substance would be imported into the United States. And I assume based on counsel's representation, in addition, that said narcotics would also be imported into the United States from a distance outside the U.S. or its territorial waters; and, fourth, that the amount of the controlled substance exceeded five kilograms of cocaine. In this case, your Honor, the government would proffer it would be in excess of 360,000 kilograms or 400 tons of cocaine.

As to venue, your Honor, that the defendant first entered a U.S. judicial district, this district, when he was extradited from Colombia to Stewart Air Force base in White Plains, New York.

THE COURT: Mr. Barrera, did you hear the elements of the offense?

THE DEFENDANT: Yes, your Honor. I heard it very well.

THE COURT: Do you understand that if the government were to proceed to trial against you, it would have the burden of proving each and every element of the offense beyond a

reasonable doubt?

THE DEFENDANT: I understand very well, your Honor.

THE COURT: Daniel Barrera, did you commit the offense with which you've been charged?

THE DEFENDANT: Yes, your Honor.

THE COURT: Tell me what you did.

THE DEFENDANT: Your Honor, I agreed with more than two other people to manufacture, distribute, and export kilograms of cocaine, knowing that they would eventually be imported into the United States.

THE COURT: When did this take place?

THE DEFENDANT: From 1998 to 2000, your Honor.

THE COURT: And you knew it was a conspiracy involving these drugs?

THE DEFENDANT: Yes, your Honor.

THE COURT: And nobody forced you to participate in the conspiracy?

THE DEFENDANT: No. I was not forced to do it, your Honor.

THE COURT: And you knew what you were doing was wrong?

THE DEFENDANT: Yes, your Honor. I did know.

THE COURT: And did it involve more than five kilograms of cocaine?

THE DEFENDANT: Yes, your Honor.

THE COURT: Other questions the government wishes me to allocute on?

MR. OLIVA: I think we want you to, if you could, ask him the relevant dates again.

THE COURT: What were the dates that this occurred, Mr. Barrera?

THE DEFENDANT: 1998 to 2011.

THE COURT: Anything else?

MR. NAFTALIS: As to the factual proffer, nothing further, your Honor.

THE COURT: Does either counsel know of any reason why I should not recommend this plea?

MR. NAFTALIS: Not from the government, your Honor.

MR. OLIVA: Not from the defense, your Honor.

THE COURT: Based on the defendant's allocution, I find that he understands the nature of the charges and the consequences of his guilty plea. I also find that the plea is voluntary and that there is a factual basis for the plea. I, therefore, recommend that the plea be accepted and direct that a presentence report be prepared.

Sentencing will take place before Judge Hellerstein on -- do you have a date?

MR. NAFTALIS: February 27 at 11:30, your Honor.

Just to clarify, your Honor, would your Honor confirm with the defendant that he's reviewed the indictment with

counsel and that he's satisfied with the explanation provided by counsel as to the charges? Just to be safe. Thank you.

THE COURT: Mr. Barrera, did you review the indictment with your attorney?

THE DEFENDANT: Yes, your Honor. We reviewed it very well.

THE COURT: And he explained it to you?

THE DEFENDANT: Yes, your Honor. And he explained it very well.

THE COURT: Do you understand what the indictment charges you with doing?

THE DEFENDANT: I understand very well, your Honor.

THE COURT: Anything else from either side?

MR. NAFTALIS: No. Thank you, your Honor.

MR. OLIVA: No, your Honor.

THE DEFENDANT: Thank you, your Honor.

THE COURT: The government will do the prosecution case summaries in the next 14 days?

MR. NAFTALIS: Absolutely.

THE COURT: And defense counsel will make himself available for probation for interview. If there's nothing further, then we are adjourned.

MR. NAFTALIS: Thank you, your Honor.

MR. OLIVA: Thank you, your Honor.

(Adjourned)